**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

UNITED STATES OF AMERICA,          )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )          No. 09-cr-20269-JPM
                                   )
CASSIE CLEMMONS,                   )
                                   )
    Defendant.                     )

**ORDER ADOPTING REPORT AND RECOMMENDATION AND
DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Cassie Clemmons's Motion to Suppress (Docket Entry ("D.E.") 23), filed October 21, 2009. The Court referred the Motion to the Magistrate Judge for Report and Recommendation. (D.E. 24.) An evidentiary hearing was held before the Magistrate Judge on November 30, 2009. (See D.E. 40.) The Report and Recommendation ("R & R") was received on February 5, 2010. (D.E. 43.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress. (Id. at 1.) On February 18, 2010, Defendant filed his Objections to the Magistrate Judge's Report and Recommendation. (D.E. 44.) The Government responded in opposition to Defendant's objections on March 4, 2010. (D.E. 46.) The Court held a second evidentiary hearing on March 11, 2010. (See D.E. 47.) With leave of Court, Defendant filed a supplemental memorandum in support of his

Objections on April 26, 2010 (D.E. 55), and the Government filed its response memorandum on May 3, 2010 (D.E. 56).  On *de novo* review, the Court having considered the arguments of the defense and of the Government, the Court adopts the Magistrate Judge's Report and Recommendation and DENIES Defendant's Motion to Suppress.

## I.   Factual Findings

On the morning of July 1, 2009, members of the Memphis Police Department's Organized Crime Unit ("OCU"), including OCU Detectives Otis Edwards and Michael Gibbs, were advised in a daily briefing that a woman had been murdered the night before near the 2700 block of Browning Avenue in south Memphis, Tennessee.  Due to concerns that more violence could erupt as a result of retaliation for the murder, members of the OCU were directed to patrol the area where the murder occurred and to be on the lookout for any suspicious activity.

At approximately 11:00 a.m., Detective Edwards drove to the Browning Avenue area in an unmarked police vehicle.  As Detective Edwards was traveling southbound,[1] a northbound-traveling Ford Contour swerved into Detective Edwards's lane nearly colliding with the detective's vehicle.  Detective Edwards immediately turned around and followed the Contour.

---

[1]    Detective Edwards testified that he did not remember the name of the street but that it was "south of Lamar . . . between Pendleton and Hays." (Nov. 30, 2010 H'rg Tr. at 12.)

Detective Edwards testified that the Contour continued to swerve in and out of the driving lane.  Because Detective Edwards was in an unmarked vehicle, Detective Edwards radioed the OCU for assistance, requesting an officer in a marked police vehicle.

After Detective Edwards followed the Contour, the Contour pulled to the side of the road.  Detective Edwards testified that as he drove past the Contour, he noticed that the vehicle had a flat tire.  Detective Edwards parked his vehicle down the street from the Contour in a position that allowed him to maintain surveillance on the vehicle and waited for the marked police vehicle to arrive.  Three individuals exited the vehicle to inspect the flat tire: Defendant, Antoine Clemmons, and Bernard Clemmons.  Within several minutes of the individuals exiting the Contour, a marked police vehicle driven by Detective Michael Gibbs arrived at the scene.

Detective Edwards testified that as the marked police vehicle driven by Detective Gibbs came into view, Defendant reached into his waistband, entered the back seat of the Contour, and "dipped his shoulders under the front seat as if he was putting something [under the seat] or taking something out." (March 11, 2010 H'rg Tr. (D.E. 56-1) at 14.)  Detective Gibbs testified that when he approached the scene in his vehicle, he saw Defendant enter the back seat of the Contour where he "leaned towards the back of the passenger's seat, leaned down,

and came back up." (Id. at 36.) Both detectives testified that
this behavior was consistent with an attempt to conceal
something. (Id. at 16 & 36.)

Detective Gibbs engaged his vehicle's emergency lights,
exited his vehicle wearing a law enforcement vest and badge, and
approached the three men. Detective Gibbs asked Defendant, who
was still in the back seat of the Contour, to exit the vehicle
and then proceeded to question Bernard Clemmons, the front seat
passenger. Detectives Gibbs and Edwards both testified that as
he questioned Bernard Clemmons, Defendant "exhibited nervous
behavior, paced back and forth as if he was about to flee, and
was not compliant with the detectives' requests that he keep his
hands were they could see them." (R & R at 11; see also Nov. 30
H'rg Tr. (D.E. 36) at 23-24 & 90.)

At this point, Detective Edwards informed Detective Gibbs
that he previously saw Defendant reach into his waistband and
then reach under the front passenger seat. The Detectives made
the collective decision to place Defendant in handcuffs.
Detective Edwards then questioned the driver of the vehicle,
Antoine Clemmons, seeking an explanation for the erratic driving
Detective Edwards previously witnessed. Antoine Clemmons
informed Detective Edwards that he was depressed because the
woman who had been murdered the night before was his sister.
Detective Edwards then asked Antoine Clemmons for consent to

4

search the vehicle, which Antoine Clemmons granted.  Detective
Edwards immediately searched under the front passenger seat and
discovered a handgun.  After discovering that the firearm was
stolen, the detectives arrested Defendant.[2]

**II.   Standard of Review**

"A district judge must determine *de novo* any part of a
magistrate judge's disposition that has been properly objected
to."  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  After
reviewing the evidence, the court is free to accept, reject, or
modify the proposed findings or recommendations of the
magistrate judge.  28 U.S.C. § 636(b)(1)(C).

**III. Analysis**

In his Report and Recommendation, the Magistrate Judge
recommended that Defendant's Motion to Suppress be denied.  In
so finding, the Magistrate Judge made three conclusions of law:
(1) the initial "stop" of Defendant's vehicle did not violate
the Fourth Amendment; (2) the detectives had reasonable
suspicion to conduct an investigatory detention of the
Defendant; and (3) the search of Defendant's vehicle did not
violate Defendant's Fourth Amendment rights because the

---

[2]     The Court acknowledges that certain inconsistencies exist between the
testimony of Detective Edwards and that of Detective Gibbs.  After having the
opportunity to observe the testimony of Detectives Otis Edwards and Michael
Gibbs, the Court finds that the testimony of the detectives is nonetheless
credible.  Thus, the Court agrees with the Magistrate Judge that the few
inconsistencies that exist "[do] not undermine the overall credibility of the
detectives, as their testimony was consistent in all material respects."
(See R & R at 4 n.4.)

detectives obtained consent to search from the driver of the
vehicle.  (R & R at 7, 10-11, 13.)  In his objections to the
Report and Recommendation, Defendant argued that the Magistrate
Judge erred in concluding that (1) there was reasonable
suspicion to conduct an investigatory detention of the
Defendant, and (2) the detectives received valid consent to
search the vehicle.  (Def.'s Mem. in Supp. of Objections to R &
R ("Def.'s Mem.") at 2.)  The Court will address both objections
in turn.

### A. Investigatory Detention

"The Fourth Amendment applies to seizures of the person,
including brief investigatory stops such as the stop of a
vehicle." United States v. Cortez, 449 U.S. 411, 417 (1981)
(citing, inter alia, Terry v. Ohio, 392 U.S. 1, 16-19 (1968)).
The fundamental inquiry when analyzing the constitutionality of
an investigatory stop or detention is whether officers "have a
particularized and objective basis for suspecting the particular
person stopped of criminal activity."  Id. at 417-18.

Assessing whether an officer possesses particularized,
objective suspicion requires a two-fold analysis.  Id. at 418.
"First, the assessment must be based on the totality of the
circumstances known to the officers at the time of the stop."
Id.  Under this "totality of the circumstances" rubric, officers
may "draw on their own experiences and specialized training to

6

make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"  United States v. Pearce, 531 F.3d 374, 380 (6th Cir. 2008); see also United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Cortez, 449 U.S. at 417-18).  Second, this assessment must "arouse a reasonable suspicion that the particular person being stopped has committed or is about to commit a crime."[3]  United States v. Montero-Camargo, 208 F.3d 1122, 1129-30 (6th Cir. 2000) (citing Cortez, 449 U.S. at 418).

Although the Supreme Court has "deliberately avoided reducing [the reasonable suspicion analysis] to a 'neat set of legal rules,'"  Arvizu, 534 U.S. at 274 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)), there are several frequently recurring factors that may aid in determining whether an officer possessed the requisite suspicion to conduct an investigatory stop.  "The most frequently recurring factors utilized in the Sixth Circuit[] . . . include: (1) nervous/evasive behavior, (2) furtive movements made in response to police presence, (3) the speed of the suspect's movements, (4) presence in a high-crime area, and (5) the time of day."  United States v. Lewis, No. 08-20028, 2008 WL 4849910, at * 3

---

[3]     Reasonable suspicion must consist of more than an "inchoate and unparticularized suspicion" or a "hunch" that criminal activity is afoot.  Arvizu, 534 U.S. at 274 (citing Terry, 392 U.S. at 27).  Reasonable suspicion, however, "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

(W.D. Tenn. Nov. 6, 2008) (<u>citing</u>, *inter alia*, <u>United States v.</u>
<u>Blair</u>, 524 F.3d 740, 752 (6th Cir. 2008); <u>United States v.</u>
<u>Caruthers</u>, 458 F.3d 459, 466 (6th Cir. 2006)).

Applying these factors to the circumstances surrounding
Defendant's arrest, the Court finds that the detectives had an
objectively reasonable suspicion to conduct an investigatory
detention of Defendant.  Detectives Edwards and Gibbs were
advised on the morning of July 1, 2009 that a woman had been
murdered the night before in the 2700 block of Browning Avenue,
near the location where the investigatory stop occurred.
Detectives Edwards and Gibbs also testified that the 2700 block
of Browning Avenue is well-known as a location where criminal
activity occurs with unusually high regularity.

The Sixth Circuit has warned against placing too much
weight on the presence of a "high-crime area" under the
reasonable suspicion analysis.  <u>See</u> <u>Caruthers</u>, 458 F.3d at 467-
68.  In the instant case, however, the detectives were
nonetheless justified in initiating their encounter with
Defendant because Defendant's vehicle was swerving in and out of
opposing lanes of traffic and nearly collided with Detective
Edwards's vehicle.

Defendant argues that "swerving in and out of lanes" does
not amount to reckless driving under Tennessee law and therefore
Detective Edwards did not have reasonable suspicion to initiate

the investigatory stop.  (Def.'s Mem. at 8.)  Detective Edwards,
however, did not need proof beyond a reasonable doubt that the
driver of Defendant's vehicle was guilty of reckless driving
before he could initiate the investigatory detention.  Rather,
in order to initiate the investigatory detention, Officer
Edwards needed only a particularized and objective basis for
suspecting that a traffic violation had occurred.  Based on
Detective Edwards's testimony that Defendant's vehicle was
swerving in and out of opposing traffic lanes, the Court finds
that it was reasonable for Detective Edwards to suspect that a
traffic violation had occurred.

Defendant also argues that even if the Court finds that the
decision to initiate the investigatory detention was reasonable,
the detectives did not have reasonable suspicion to prolong
Defendant's detention.  In support of this argument, Defendant
cites United States v. Smith, 263 F.3d 571 (6th Cir. 2001).
Smith involved the continued detention of a defendant after a
traffic stop was completed.  Id. at 593-94.  The Sixth Circuit
considered a multitude of factors under the totality of the
circumstances test when analyzing whether the arresting officer
had reasonable suspicion to support the continued detention.
The court found that the "combination of wholly innocent
factors," such as defendant's strong body odor, failure to make
eye contact with the officer, and the presence of fast-food

wrappers, was insufficient to rise to the level of reasonable suspicion.  Id. at 594.

Defendant argues that because he and his fellow passengers were changing a tire when detained by the detectives, that they "were engaged in wholly innocent activity" that cannot "add up to reasonable suspicion" under Smith.  (Def.'s Mem. at 12.) Defendant's reliance on Smith, however, is misplaced.  Smith involved a prolonged detention that occurred after the completion of a traffic stop.  The detention in this case was initiated to investigate the potential traffic violation witnessed earlier by Detective Edwards.  Therefore the fact that Defendant and his fellow passengers were changing a flat tire when the detectives initiated the encounter is irrelevant to the analysis.

During this initial detention, both Detectives Edwards and Gibbs witnessed additional activity that established reasonable suspicion to prolong the detention beyond the time necessary to investigate the potential traffic violation.  Specifically, Detective Edwards testified that when Detective Gibbs's marked police vehicle came into view, Defendant reached into his waistband, entered the back seat of the vehicle, and "dipped his shoulders under the front seat as if he was putting something [under the seat] or taking something out."  (March 11, 2010 H'rg Tr. at 14.)  Detective Gibbs testified that although he did not

see Defendant reach towards his waistband, he did see Defendant in the back seat of the vehicle where he "leaned towards the back of the passenger's seat, leaned down, and came back up." (Id. at 34.)  Both detectives testified that this behavior was consistent with an attempt to conceal something.  (Id. at 16 & 36.)

Moreover, both detectives testified that Defendant "exhibited nervous behavior, paced back and forth as if he was about to flee, and was not compliant with the detectives' requests that he keep his hands where they could see them." (See R & R at 11.)  The Court agrees with the Magistrate Judge that Defendant's behavior "added to the detectives' suspicion that criminal activity was afoot."  (See id. at 11-12.)

The Court finds that based on Detective Edwards's testimony regarding the potential traffic violation, the testimony of both detectives regarding Defendant's actions and behavior after the detectives initiated the investigatory detention, along with the fact that the detention occurred the day after a murder in a high crime area, the detectives were justified in their initial and continued detention of Defendant.  The Court therefore adopts the Magistrate Judge's conclusion that the investigatory detention of Defendant conducted by Detectives Edwards and Gibbs comported with the Fourth Amendment.

**B. Consent Search**

A search without a warrant is "per se unreasonable under
the Fourth Amendment subject only to a few specifically
established and well-delineated exceptions." Katz v. United
States, 389 U.S. 347, 357 (1967). "One of those 'well-
delineated' exceptions is the consent of the person searched.
An officer with consent needs neither a warrant nor probable
cause to conduct a constitutional search." United States v.
Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v.
Bustamonte, 412 U.S. 218, 219 (1973)). "[A] search is not
unreasonable if an individual with a privacy interest in the
item to be searched gives voluntary consent." United States v.
McCauley, 548 F.3d 440, 446 (6th Cir. 2008) (citing Schneckloth,
412 U.S. at 219). "Valid consent may be provided not only by
the defendant but also by 'a third party who possessed common
authority over or other sufficient relationship to the premises
or effects sought to be inspected.'" Id. (quoting United States
v. Matlock, 415 U.S. 164, 171 (1974)).

Defendant does not dispute that Antoine Clemmons, the
driver of the vehicle in which Defendant was a passenger, had
the authority to give consent to search the vehicle, or that he
did in fact give such consent. Defendant argues that the

consent obtained from Antoine Clemmons was invalid because it was not knowingly and voluntarily given.[4]

The Government bears the burden of proving that the consent was knowing and voluntary by "clear and positive testimony." Id. (citation and internal quotation marks omitted). "Voluntariness is determined by examining the totality of the circumstances."  Id. (citing Schneckloth, 412 U.S. at 227).

Defendant argues that Antoine Clemmons did not knowingly and voluntarily consent for three reasons.  First, Defendant contends that Antoine Clemmons was merely "acquiescing to authority" when he gave consent to search the vehicle. Defendant bases this contention on Detective Edwards's testimony that Defendant "had already been placed in handcuffs when he asked Mr. Antoine Clemmons if he could search the vehicle." (Def.'s Mem. at 15.)  As noted by the Magistrate Judge, however, Antoine Clemmons testified that he was unaware that Defendant was in handcuffs when he gave consent to search the vehicle. (See R & R at 14; Nov. 30, 2009 H'rg Tr. at 131–32.)

Second, Defendant argues that Antoine Clemmons did not knowingly and voluntarily consent because he was "upset and emotional" because his sister had been murdered the night before.  (Def.'s Mem. at 14.)  The weight of the testimony,

---

[4]    Defendant also argues that Antoine Clemmons's consent was invalid because it was tainted by the earlier illegal investigatory detention. Having found that the detectives had reasonable suspicion to detain Defendant, this argument is without merit.

however, establishes that Antoine Clemmons was not exhibiting bizarre or erratic behavior but rather was "relaxed" and "calm" when being question by the detectives.  (March 11, 2010 H'rg Tr. at 20.)  Antoine Clemmons's testimony further supports the finding that he understood the seriousness of the situation as he attempted to instruct Defendant to "be still" and "[j]ust be calm."  (See Nov. 30, 2009 H'rg Tr. at 136.)

Lastly, Defendant argues that Antoine Clemmons's consent was invalid because the detectives never explained to Antoine Clemmons that he had a right to refuse consent.  (Def.'s Mem. at 15.)  Although "knowledge of the right to refuse may be considered as a factor" when determining voluntariness, "it is not a necessary finding."  McCauley, 548 F.3d at 446 (citing Schneckloth, 412 U.S. at 227).  The mere fact that Antoine Clemmons was not told that he had a right to refuse consent does not render his consent invalid.

As discussed *supra*, determining voluntariness requires an examination of the entire circumstances surrounding the search. After examining the totality of the circumstances, the Court finds that Antoine Clemmons knowingly and voluntarily consented to the search of the vehicle.  Defendant advances no allegations that Antoine Clemmons was threatened or that coercion was used in obtaining his consent.  The Government has established by "clear and positive" testimony that Antoine Clemmons freely and

14

voluntarily consented to the search.  The Court therefore adopts the Magistrate Judge's conclusion that the search of the vehicle and seizure of the firearm did not violate Defendant's Fourth Amendment rights.

### IV.  Conclusion

For the foregoing reasons, the Court, on *de novo* review, adopts the Magistrate Judge's Report and Recommendation and Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED,** this 21st day of July, 2010.


/s/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE